Jacobs *v.* Alexander.

———————————

JACOBS *vs.* ALEXANDER and wife.

B., an aged lady, who was very ill and expected to die of her then sickness, caused two deeds, to her daughters, of portions of her real estate, to be prepared, and signed and acknowledged them, and handed them to T., instructing him to deliver them to the grantees respectively, after her death; adding at the same time, "If I recover from my present sickness, I intend to retain the right to control the property myself, as long as I live." She recovered, and lived nearly five years. Soon after her recovery she received back the deeds from T., and never delivered the deed to A., one of the grantees, but the latter obtained possession of it after the grantor's death. *Held,* that the deed to A. was inoperative, for want of a delivery.

MOTION by the plaintiff for a new trial, upon exceptions. The case is sufficiently stated in the opinion.

*J. L. Talcott,* for the plaintiff.

*A. P. Nichols,* for the defendant.

*By the Court,* MARVIN, P. J. Action to recover possession of land. Hannah Bacon, who died in July, 1847, was seised in fee of the premises, and the plaintiff claims through a title, alleged to be derived by deed from Hannah Bacon, under the fol-

lowing circumstances. In November, 1842, Mrs. Bacon was very ill, and said she was going to die. She was then about 74 years old. She requested her physician to prepare two deeds; one to Mrs. Alexander, a daughter, and the other to Mary Anguish, another daughter. He prepared the deeds, and Mrs. Bacon signed and sealed them, and they were witnessed and acknowledged. Mrs. Bacon was then living with Mrs. Alexander on the premises, a portion of which is claimed in this suit, being the premises described in the deed to Mary Anguish. After signing and acknowledging the deeds, Mrs. Bacon told the witness, Dr. Thomas, to take the deeds and keep them, and after her death to deliver them to the grantees. She said to him that, if she recovered from her present sickness, she intended to retain the right to control the property herself as long as she lived. Thomas took the deeds home; Mrs. Alexander and Mrs. Anguish were present. It does not appear that any thing was said by them. Mrs. Bacon recovered and lived nearly five years. Some seven to nine months after Thomas had taken the deeds, a person called upon him touching the deeds, and he, in consequence thereof, carried the deeds back to Mrs. Bacon, and left them with her. After Mrs. Bacon's death Mary Anguish procured possession of the deed to her. The consideration mentioned in the deed was $500. It was, however, admitted that no pecuniary consideration passed between Mary Anguish and Mrs. Bacon. The court decided that the deed to Mary Anguish never operated to pass any title to her, or interest in the premises. An exception was taken, and thereupon the court directed the jury to render a verdict for the defendants, and the plaintiff excepted.

The delivery of a deed is essential to its due execution, and it takes effect only from its delivery. (4 *Kent's Com.* 454.) The sole question presented in this case is, was the deed, to Mary Anguish, delivered? The plaintiff claims that the delivery to Dr. Thomas, under the circumstances, was a sufficient delivery to the grantee. It will be proper to examine some of the cases.

It is not necessary that the deed be actually delivered to the

grantee. Other acts have been held tantamount to a delivery, and sufficient to carry the title to the grantee. A deed may be delivered to a third person, to be by him delivered to the grantee, upon the grantee doing some act, as paying money, &c. In such a case the deed is delivered as an *escrow*, and the general rule is, that the title does not pass until the condition is performed and the deed is actually delivered, but justice sometimes requires a vesting of the title from the time when the deed was delivered as an *escrow*, and in such cases resort is had to fiction, and it is held that the grantee took the title by relation back to the time the deed was delivered as an *escrow*. (4 *Kent's Com.* 454. *Jackson* v. *Catlin*, 2 *John.* 258.)

In *Ruggles* v. *Lawson*, (13 *John.* 285,) the grantor delivered deeds, in which certain of his children were respectively named grantees, to a third person, directing such person, in case he, the grantor, should die before making his will, to deliver the deeds to his children, respectively. The grantor died before the will could be prepared, and soon after his death the person entrusted with the deeds delivered them to the grantees, respectively. It was held that the deeds took effect from the first delivery. In *Goodell* v. *Pierce*, (2 *Hill*, 659,) the grantor directed the person to whom he delivered the deed to retain it during the grantor's life, and in case of his death to deliver it to some person, to be kept for the grantee. The grantor died, and the deed was delivered as he had directed, &c., and it was held by the court that it was effectual to transfer title. In *Tooley* v. *Dibble*, (2 *Hill*, 641,) the instructions were, to deliver the deed to the grantee after the grantor's death, but not to deliver it during the grantor's life, unless both he and the grantee came for it. The deed was delivered after the death of the grantor, and the court held that the grantee took title by relation from the time the deed was delivered to the agent or depository. In *Souverbye* v. *Arden*, (1 *John. Ch. R.* 240,) the chancellor found as a fact, from the evidence, that the deed was delivered. Subsequently it was in the possession of the grantor, and it was held that the subsequent custody of the deed by the grantor did not destroy the effect of the delivery. This case has no application

to the case we are considering.   It was cited probably on account of the cases referred to in the opinion.   It is not necessary to notice them particularly here.   *Wheelright* v. *Wheelright* (2 *Mass. R.* 447) holds that a deed delivered to a third person *as the deed of the grantor*, to be delivered over to the grantee on a future event, is the deed of the grantee presently, but if delivered as a *writing* or *escrow* of the grantee, to be delivered on some future event, it is not the grantor's deed until the second delivery.   Kent does not approve this distinction. (4 *Kent's Com.* 455, *note.*)   But it is not necessary to consider the distinction here.

It will be noticed that in all the above cases no control was retained by the grantor over the delivery of the deed to the grantee.   An event or condition was specified upon which the delivery was to depend, and when that event happened, or the condition was performed, the deed was delivered.   And I think the authorities show that when the event specified is the death of the grantor, and the deed is delivered after the death, the grantee is deemed to take title by relation at the time the deed was delivered by the grantor to the third person.   In the case we are considering the delivery to Dr. Thomas was qualified. The grantor was aged and very ill, and expected to die of her then sickness.   Under these circumstances she caused the deeds to be prepared, signed them, ancknowledged them and handed them to Thomas, instructing him to deliver them to the grantees respectively, after her death, adding, at the same time, "if I recover from my present sickness, I intend to retain the right to control the property myself as long as I live."   She recovered and lived nearly five years, and soon after her recovery she received back the deeds from Dr. Thomas, and never delivered the deed to Mary Anguish; but Mary obtained possession of it after her death.   It seems to me that this case is clearly distinguishable in principle from the cases cited by the plaintiff's counsel. When she authorized Thomas to deliver the deeds after her death to the grantees, she had reference to her death from her then sickness, as is clear from her avowed intent, in case she should recover, to retain the right to control the property.   At

---

Jacobs *v.* Alexander.

---

any rate she retained the right, in case she recovered, to control the property as long as she lived, and this involved the right to recall the deeds and make any other disposition of the property, by will or otherwise; and she exercised this right by recalling the deeds, and taking them into her own possession and under her own control.   The grantee, Mary Anguish, had no vested interest in, and no control over, the deed.   In *Tooley* v. *Dibble,* (*supra,*) Benedict was not to deliver the deed during the grantor's life, *unless both he and the grantee came for it.*   The court remarking upon this says, " the consent of the grantor was, by agreement, made necessary before the deed could be delivered up," that is, to the grantee.   In *Stilwell* v. *Hubbard,* (20 *Wend.* 44,) the grantor caused a deed to be prepared; he signed and sealed it, and acknowledged it, and inquired whether the deed would give his daughter, the grantee, the land after his death, and was advised that it would.   He retained the deed in his own possession till his death, and the court held the deed inoperative for want of delivery.   See also *Hinman* v. *Booth,* a case where the deed was deliverable upon a condition to be performed by the grantee.   (*Jackson* v. *Dunlap,* 1 *John. Cas.* 114, *and note.*)   In the present case it was attempted to found an agreement upon the consideration expressed in the deed to Mary Anguish, and upon the fact that she was present and made no objection at the time of the delivery to Thomas, claiming that an interest vested at once in the grantees, which was beyond the control of Mrs. Bacon.   The difficulty is that no interest could vest unless there was a delivery of the deed; so that the question must turn entirely upon the delivery.   In my opinion she retained a control over the deeds, and a right to recall them in case she recovered.   She did recall them, and they were never thereafter delivered.   A new trial should be denied, with $10 costs.

[ERIE GENERAL TERM, January 22, 1855.   *Bowen, Marvin* and *Greene,* Justices.]